Filed 6/10/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, <br>     Plaintiff and Respondent, <br> v. <br> BANKERS INSURANCE CO., <br>     Defendant and Appellant. | A157633 <br><br> (San Mateo County <br> Super. Ct. No. 18NF009324-A) |

    Bankers Insurance Company (the Surety) appeals from trial court orders denying its motion to vacate forfeiture and exonerate bail and denying its subsequent motion to toll time. Because the trial court failed to timely enter summary judgment and now lacks jurisdiction to enforce the forfeiture under Penal Code section 1306, subdivision (c), in any event, we will not reach the merits. Instead, we will direct the trial court to enter an order exonerating the bond.

### FACTUAL AND PROCEDURAL BACKGROUND

    On August 9, 2018, the Surety, through its bail agent Bail Hotline Bail Bonds, posted a bond of $100,000 for the release of Jammie Lee (Lee or defendant) from the San Mateo County Jail.

    On September 13, 2018, Lee failed to appear at a scheduled preliminary hearing. The court issued a bench warrant for Lee and ordered the bail forfeited.

1

On September 21, 2018, the clerk of the court mailed a "Notice of Order Forfeiting Bail" to the Surety. The notice provided, "You may seek relief from this forfeiture in accordance with California Penal Code sections 1305 through 1306. You have 180 days from the date of this notice to seek such relief, plus 5 more days if this notice was mailed to you."

*Motion to Vacate Forfeiture and Exonerate Bail*

On March 25, 2019, the Surety filed a motion to vacate the forfeiture and exonerate the bail. Supporting exhibits indicated that Lee was currently in custody in the Alameda County Jail on federal charges and that the San Mateo County District Attorney's Office had been notified of defendant's detention in federal custody. In a supporting declaration, Roman Clark, a fugitive recovery agent, stated, first, that Alameda County was informed of Lee's San Mateo County warrant, but a jail employee would not sign a form accepting or declining surrender and, second, that a law enforcement employee in San Mateo County reported she was unable to place a hold on Lee.[1]

---

[1] Clark declared he located defendant in custody at the Alameda County Jail on January 3, 2019. Clark went to the jail and spoke with Technician Hull on January 4. He gave Hull an "Affidavit of Surrender" and "Receipt Accepting or Declining the Surrender" for defendant. (The "Receipt Accepting/Declining Surrender of Defendant by Bondsman" that Clark provided Hull identified Lee by date of birth and listed the San Mateo County criminal case number, the bond number, and the warrant number.) Hull said he would not be able to place a hold on defendant and told Clark to follow up the next day. The next day, Clark called the Alameda County Jail and spoke with Deputy Sullivan, who told him they would not be able to place a hold on defendant since there was a U.S. Marshall hold in the system. On January 7, 2019, Clark called the Colma police and spoke with Dispatcher Thelma, who agreed to try to place a hold on defendant. He called Thelma one week later. According to Clark, "Thelma stated, that due to the reasons she can not disclose she was unable to place a hold on our defendant."

The Surety advanced three arguments in support of its motion: (1) the court was required to vacate the forfeiture and exonerate the bail under Penal Code section 1305, subdivision (c)(3) (§ 1305(c)(3))[2] because defendant had been surrendered by the bail agent to local law enforcement agencies; (2) if the district attorney were to choose not to extradite defendant, exoneration of bail was required under section 1305, subdivision (f) (§ 1305(f)); and (3) if the district attorney were to place a hold on defendant, the court should exonerate bail under section 1305, subdivisions (i) and (c)(3).

In support of its first argument, the Surety relied on the principle "where the government interferes with the performance of the bail contract or makes performance impossible the bond is exonerated." It argued Clark diligently tried to have defendant surrendered on the warrant, but "Despite proper surrender documentation given by the bail agent to the jailer on January 4, 2019, . . . the Alameda County Sheriff's Department refused to accept the surrender of the defendant on the out of county warrant."

As alternative relief, the Surety requested tolling urging, "At the very least the bondsman is entitled to a tolling of time pursuant to Penal Code § 1305(e) while the defendant is disabled from appearing in court because of his incarceration in Federal Custody at the Alameda County Jail."[3] The

---

[2] Section 1305(c)(3)) provides, "If, outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180–day period, the court shall vacate the forfeiture and exonerate the bail." Further undesignated statutory references are to the Penal Code.

[3] Section 1305, subdivision (e) (§ 1305(e)) provides that the court "shall order the tolling of the 180–day period" where the "defendant is temporarily disabled by reason of illness, insanity, or detention by military or civil authorities," "[b]ased upon the temporary disability, the defendant is unable

3

motion concluded, "Wherefore, it is respectfully requested that the court vacate the forfeiture and exonerate bail or in the alternative toll time."

In opposition, the People argued the Surety had not offered competent evidence that the person located in the Alameda County Jail was, in fact, Lee,[4] and, in any event, there was no "surrender" to custody given that the Surety never arrested defendant and never delivered defendant to the court or to law enforcement. The People further claimed the Surety failed to demonstrate that surrender of defendant "was made impossible" and asserted section 1305(f) did not apply because the San Mateo District Attorney was electing to seek extradition of defendant.[5]

A hearing on the motion was held on April 15, 2019. The trial court indicated it would deny the motion because section 1305(f) did not apply (since the District Attorney was electing to extradite Lee) and because the alternative request for tolling was not properly referenced in the notice of motion. The court did not mention the Surety's primary argument that it

---

to appear in court during the remainder of the 180–day period, and "[t]he absence of the defendant is without the connivance of the bail."

[4] One of the exhibits to the Surety's motion appeared to be a printout dated January 14, 2019, of an Alameda County inmate locator website, which indicated that a "Jamie Lee" with the same date of birth as defendant had been arrested in November 2018 and was in custody in the Alameda County Jail for federal criminal charges.

[5] In a supporting declaration, Chief Deputy District Attorney Albert Serrato stated it was the understanding of the District Attorney's Office that defendant was currently detained in federal custody in the Alameda County Jail, and the office had elected to extradite defendant to San Mateo County.

4

was entitled to exoneration of the bond because the defendant was surrendered to custody.[6]

The Surety's attorney then argued its request for tolling was properly before the court under "the Lexington decision."[7]  The court denied the motion "without prejudice" and indicated the Surety could "resubmit it correctly."  The Surety's attorney asked for a continuance rather than denial

---

[6] The trial court's reasons for denying the Surety's motion are gleaned from its discussion on the record in *People v. Calderon*, San Mateo County Superior Court Case No. 18NF006480A, a case in which the Surety sought to vacate forfeiture raising the same legal and procedural issues on strikingly similar facts—a defendant found in custody in Alameda County on federal charges where the jailer would not sign the bail agent's proffered affidavit and receipt regarding the defendant's San Mateo County warrant.  (The forfeiture order in *Calderon* is now on appeal; see *People v. Bankers Insurance Co.* (A157635, app. pending).)  The Surety's motions in *Calderon* and in this appeal were heard on the same day.  The trial court first heard argument on the Surety's motion in *Calderon*, denying the motion.  The parties immediately segued to argument on the motion currently on appeal, and the court denied the motion on "the same basis" as in *Calderon*.  We have granted the Surety's unopposed motion to augment the record on this appeal with the *Calderon* motion hearing transcript.

[7] In *People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, the surety Lexington moved to vacate forfeiture and exonerate its bond under section 1305, subdivision (c) where the defendant was known to be in custody out of state.  At the hearing on the motion, after the trial court indicated the motion would be denied, counsel for Lexington asked for tolling; the court denied the request on the ground tolling had not been properly requested by noticed motion.  (*Id.* at pp. 1488-1489.)  The appellate court, however, concluded the trial court should have granted Lexington relief, either exoneration or tolling.  (*Id.* at p. 1492.)  The court rejected the argument that Lexington's tolling request was untimely and not properly noticed.  "The [trial] court's denial of exoneration implicitly indicated it was not satisfied the disability was permanent.  Thus, the disability was necessarily temporary, and the court was compelled by the statutory scheme to consider and grant a tolling based on the temporary nature of the disability."  (*Id.* at p. 1493.)

without prejudice, explaining there was "not specific case law" authorizing motions after 180 days but a continuance would allow "an additional notice of motion." The court denied the continuance request without explanation.

*Motion to Toll*

On April 19, 2019, the Surety filed a motion requesting tolling under section 1305(e). The People opposed, arguing the motion was untimely because it was filed after the 180–day period following the notice to the Surety of forfeiture by the clerk of the court. The court denied the motion.

## DISCUSSION

While the Surety does argue it was entitled to exoneration or tolling at the time the trial court denied its motion to vacate forfeiture and exonerate bond, its primary contention on appeal is that it is entitled to appellate relief because the trial court has now lost jurisdiction to enforce the forfeiture. The Surety asserts that, after the denial of its motion, the trial court failed to enter summary judgment against the Surety within the statutory period for doing so and therefore, pursuant to section 1306, subdivision (c) (§ 1306(c)), "the bail is exonerated."

Before we can address this contention, we must decide whether we should consider a fact that did not exist when the court made its ruling.

"It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment [or appealable order], an appellate court will consider only matters which were part of the record at the time the judgment [or order] was entered. [Citation.] This rule preserves an orderly system of appellate procedure by preventing litigants from circumventing the normal sequence of litigation." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 (*Reserve Insurance*).)

6

Our Supreme Court has recognized, however, that this rule "is somewhat flexible." (*Reserve Insurance*, *supra*, 30 Cal.3d at p. 813.) For example, "courts have not hesitated to consider postjudgment events when legislative changes have occurred subsequent to a judgment [citations] or when subsequent events have caused issues to become moot [citation]." (*Ibid*.) In *Reserve Insurance*, our high court deemed it appropriate to consider the fact that a plaintiff insurance company became insolvent postjudgment in resolving an appeal in a declaratory judgment action regarding insurance coverage. (*Id*. at pp. 805–806, 813.) The court reasoned, "because the fact [of insolvency] is not in dispute, we do not usurp the fact-finding function of the trial court. A prompt determination by us avoids the necessity for repetitive litigation of issues that have been fully briefed. Furthermore, the court records regarding [the insurance company]'s insolvency would properly be the subject of judicial notice." (*Id*. at p. 813.)

We believe this appeal presents that rare case where it is appropriate for us to consider events that occurred after entry of the appealed order. It is undisputed that no summary judgment has been entered in this case. A prompt determination that the bond has been exonerated avoids repetitive litigation. And the court record showing the absence of a summary judgment would properly be the subject of judicial notice (Evid. Code, § 452, subd. (d)). Accordingly, we will consider the new fact that the trial court has failed to enter summary judgment as of September 21, 2020.

"When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. (§ 1305, subd. (a).)" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 658 (*American Contractors*).) Here, defendant failed to appear on September 13, 2018, and the clerk mailed a

7

notice of forfeiture on September 21, 2018, starting the 185–day appearance period.  (See *ibid*.; § 1305, subd. (b)(1).)[8]

After the appearance period "has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound."  (§ 1306, subd. (a).)

But the trial court's authority to enter summary judgment is time limited.  Section 1306(c), provides, "If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, *the right to do so expires and the bail is exonerated*." (Italics added.)  This time limit is jurisdictional.  (See *American Contractors, supra*, 33 Cal.4th at p. 663 [" 'Under the Penal Code, *a court has jurisdiction* over a bail bond from the point that it is issued *until* the point it is either satisfied, exonerated, or *time expires to enter summary judgment* after forfeiture' " (italics added)]; *People v. Surety Ins. Co.* (1973) 30 Cal.App.3d 75, 79–80 ["There can be no doubt the Legislature intended to impose a 90–day time limit in which to enter summary judgments on defaulted bail which is

---

[8] During the appearance period, a surety may move to vacate the order of forfeiture and exonerate the bond based on the defendant's appearance in court (§ 1305, subd. (c)(1)), the defendant's surrender to custody by the bail or arrest in the underlying case within the county where the case is located (*id*., subd. (c)(2), or the defendant's surrender to custody by the bail or arrest in the underlying case outside the county where the case is located (*id*., subd. (c)(3)) (the basis for the Surety's motion in the present case).  And, as we have seen (fn. 3, *ante*), the trial court is required to toll the appearance period during periods when the defendant's temporary disability prevents appearance.  (§ 1305(e).)

jurisdictional, for the statute uses the words: '[or]the right to do so expires and the bail is exonerated' "].)

Generally, the 90–day period during which the trial court has authority to enter summary judgment begins after the 185–day appearance period. However, "in cases where a motion to vacate forfeiture is timely filed prior to the expiration of the [appearance] period, but not decided until after that period, the 90–day period to enter summary judgment begins to run when the motion is denied." (*People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758, 767 (*Granite State*).)

In this case, the Surety filed a timely motion to vacate forfeiture and exonerate bond on the 185th day of the appearance period, March 25, 2019. Therefore, under *Granite State*, the trial court's 90–day period to enter summary judgment began after the court denied the Surety's motion on April 15, 2019. That period expired July 15, 2019.[9] Since it is not disputed that summary judgment was not entered by July 15, 2019, the trial court's "right to [enter summary judgment] expire[d] and *the bail is exonerated.*" (§ 1306(c), italics added; see *American Contractors*, *supra*, 33 Cal.4th at p. 658 ["If summary judgment is not entered within the statutory 90–day period, the bond is exonerated"].)

---

[9] This appeal by the Surety did not divest the trial court of jurisdiction to enter summary judgment. (See *People v. Indiana Lumbermens Mutual Ins. Co.* (2014) 226 Cal.App.4th 1, 6–10 [holding the trial court retained jurisdiction to enter summary judgment on a forfeited bond during the pendency of a surety's appeal from an order denying its motion to vacate], disapproved of on another point by *K.J. v. Los Angeles Unified School Dist. (*2020) 8 Cal.5th 875, 888, fn. 6.) Thus, this appeal does not toll the 90–day period to enter summary judgment. (*County of Sacramento v. Insurance Co. of the West* (1983) 139 Cal.App.3d 561, 563.)

Under these circumstances, there is no purpose in our determining whether the trial court erred in denying either the Surety's motion to vacate forfeiture and exonerate bond or its subsequent motion to toll because, in any event, the People cannot enforce the forfeiture of the bond. The appeal of the trial court's rulings has been, in effect, mooted by subsequent events.

The People offered no argument for avoiding the result that the bond has been exonerated by operation of law under section 1306(c). At oral argument, county counsel stated he had no evidence that the period for entering summary judgment had not expired, and he suggested that if the Surety were to file a motion to exonerate the bond under section 1306(c) in the trial court, the People would likely file a non-opposition. Thus, there is no dispute about either the absence of summary judgment in this case or the legal consequence of that absence. In concluding the bond is exonerated, "we do not usurp the fact-finding function of the trial court" because the facts are undisputed. (*Reserve Insurance*, *supra*, 30 Cal.3d at p. 813.)

We reiterate the general "rule of appellate procedure [is] that, when reviewing the correctness of a trial court's [order], an appellate court will consider only matters which were part of the record at the time the [order] was entered." (*Reserve Insurance*, *supra*, 30 Cal.3d at at p. 813.) This rule "preserves an orderly system of appellate procedure [and] prevent[s] litigants from circumventing the normal sequence of litigation." (*Ibid*.) But in this unusual case, in the interests of judicial efficiency, we will direct the trial court to enter an order exonerating the bond.

## DISPOSITION

The trial court is directed to enter an order exonerating the bond.

10

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A157633, *People v. Bankers Ins. Co.*

11

Court: San Mateo County Superior Court

Trial Judge: Hon. Amarra A. Lee

Law Office of John Rorabaugh, John Mark Rorabaugh, Crystal L. Rorabaugh, for Defendant and Appellant

John C. Beiers, County Counsel, Joseph F. Charles, Deputy County Counsel, for Plaintiff and Respondent

A157633, *People v. Bankers Ins. Co.*